UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL PONTIER,<br><br>            Plaintiff,<br><br>v.<br><br>MERRICK B. GARLAND, in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES,<br><br>            Defendant. | Case No.: 24-cv-00966-AJB-JLB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO PARTIALLY DISMISS PLAINTIFF'S COMPLAINT**<br><br>**(Doc. No. 7)** |

Presently pending before the Court is Defendant Attorney General Merrick Garland's Motion to Partially Dismiss Plaintiff Daniel Pontier's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 7.) Plaintiff filed an opposition to the motion to dismiss (Doc. No. 9), to which Defendant replied (Doc. No. 10). Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument. For the reasons stated herein, the Court **GRANTS** the Motion to Partially Dismiss Plaintiff's Complaint.

## I.     BACKGROUND

This case is an employment discrimination and retaliation suit against Attorney General Merrick B. Garland, sued here in his official capacity as the head of the Department of Justice and federal Bureau of Prisons ("BOP" or "Agency").

### A. Plaintiff's Employment

Plaintiff is a former employee of the BOP, primarily as a Correctional Systems Officer ("CSO"), from 2003 until January 2020. (Complaint ("Compl."), Doc. No. 1, ¶¶ 3, 5.) Beginning around 2008–2009, Plaintiff worked at the BOP's Metropolitan Correctional Center in downtown San Diego, California. (*Id.* ¶ 5.)

Plaintiff states he is a Black and Latino gay male who has been diagnosed with anxiety, depression, and a panic disorder, all of which were known by Defendant. (*Id.* ¶ 8.) He asserts that for a period of years, he was subjected to a hostile work environment on the basis of sex and/or sexual orientation and, after reporting the continuing harassment to supervisors, was subjected to retaliation from BOP management. (*Id.* ¶ 9.)

Plaintiff alleges his co-worker, Officer Gallegos, began to publicly make anti-gay comments, both behind his back and when he was present, and she frequently used homosexual slurs and "jokes." (*Id.* ¶ 13.) Plaintiff reported these hostile comments to his supervisors, who were dismissive of his concerns. (*Id.* ¶ 14.) On or about May 27, 2016, Officer Gallegos "outed" Plaintiff as a gay man to a number of his co-workers in a high-traffic area of the workplace, including employees from different departments and inmates. (*Id.* ¶ 15.)

### B. Plaintiff's EEO Complaints, Alleged Retaliation, and Subsequent EEO Proceedings

On September 22, 2016, Plaintiff contacted his department's Equal Employment Opportunity ("EEO") point-of-contact and requested informal or pre-complaint counseling. (*Id.* ¶ 16.) Thereafter, Plaintiff filed a formal EEO complaint (BOP-2016-01176) based on the hostile work environment he was subjected to, his supervisor's indifference to his complaints, and retaliation by BOP management for Plaintiff reporting the harassment. (*Id.* ¶ 17.) As Plaintiff's formal EEO complaint was accepted and referred for investigation, his department's managers and supervisors continued to punish Plaintiff for making reports of discrimination and harassment. (*Id.* ¶ 18.) For example, Defendant separated Officer Gallegos and Plaintiff by leaving Officer Gallegos in place and assigning

Plaintiff to work in the mail room. (*Id.* ¶ 21.) While the reassignment was temporary, Defendant moved Plaintiff to a different shift once placed back in his regular assignment as a CSO. (*Id.*) Officer Gallego, by contrast, was not moved to another department and her schedule was unchanged. (*Id.*)

After the close of the EEO investigation in BOP-2016-01176, but before the requested EEOC hearing in July 2021, Defendant continued to retaliate against Plaintiff. (*Id.* ¶ 23.) Thus, Plaintiff initiated a new EEO proceeding to seek redress for the new violations, and after the pre-complaint counseling phase, filed a second formal EEO complaint (BOP-2019-01605). (*Id.* ¶ 24.) This second EEO complaint addressed Defendant's discrimination and retaliation that occurred in 2019 and briefly in January 2020. (*Id.* ¶ 25.)

On or about January 30, 2019, Defendant furloughed Plaintiff, pretextually placing him on administrative leave and ordering Plaintiff to undergo a Fitness for Duty examination before he would be permitted to return to work. (*Id.* ¶ 26.) The predicate for this furlough arose from an off-duty phone call from one of Plaintiff's supervisors, Supervisor Zuniga, to Plaintiff. (*Id.* ¶ 27.) At the time of the phone call, Plaintiff had been drinking alcohol, "as had become a more frequent habit at the time, a consequence of his spiking anxiety and depression because of the hostile work environment he encountered on a daily basis at work with no apparent end in sight." (*Id.* ¶ 30.) Supervisor Zuniga alleged Plaintiff made some statements on the phone call that were interpreted as a threat. (*Id.* ¶ 31.) Following Plaintiff's Fitness for Duty examination, Plaintiff was found unfit for duty as a CSO and that Plaintiff's "current course of treatment (if any) would "not substantially improve functional ability[.]" (*Id.* ¶ 33.)

On or about November 14, 2019, Defendant issued a Notice of Proposed Removal letter to Plaintiff. (*Id.* ¶ 35.) Thereafter, Plaintiff amended his second EEO complaint to include Defendant's stated intent to terminate his employment with the BOP. (*Id.*) On or about January 13, 2020, Defendant then issued a Notice of Removal to Plaintiff. (*Id.* ¶ 36.) Plaintiff immediately notified EEO of the new adverse employment action while the

investigation was still open and ongoing. (*Id.* ¶ 37.) When the investigation closed on his 2019 EEO complaint, Plaintiff requested an EEO hearing for those claims and requested the two matters be joined as one. (*Id.* ¶ 39.) The EEOC declined to merge the two EEO complaints, and Plaintiff withdrew his request for hearing and opted to wait for Defendant to issue a Final Agency Decision ("FAD"). (*Id.* ¶ 40.)

On September 30, 2021, Administrative Judge Robbins-Umel issued her Decision on Plaintiff's EEO complaint, finding that Plaintiff proved by a preponderance of the evidence that Defendant subjected Plaintiff to harassment based on sexual orientation, and that Defendant retaliated against Plaintiff for his reporting harassment based on sexual orientation when management transferred Plaintiff to the mail room and reassigned him to the evening shift. (*Id.* ¶ 43.) Administrative Judge Robbins-Umel awarded Plaintiff damages and attorney's fees. (*Id.*)

On March 5, 2024, Defendant issued its FAD on the BOP-2019-01605 complaint and Rights of Appeal Letter. (*Id.* ¶ 46.) In the FAD, Defendant found it was not liable for the claims raised in Plaintiff's second EEO complaint. (*Id.*) Defendant thereafter placed Plaintiff on administrative leave and ultimately terminated his employment. (*Id.*)

### C.  Procedural History

Plaintiff filed the Complaint in this Court on May 31, 2024, alleging three causes of action: (1) discrimination on the basis of sex, sexual orientation, and/or disability in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16 ("Title VII"), and the Rehabilitation Act of 1973, 29 U.S.C. § 791 (the "Rehabilitation Act"); (2) retaliation/reprisal in violation of Title VII, 42 U.S.C. § 2000e-5; and (3) failure to accommodate disability in violation of the Rehabilitation Act. (*See* Compl.)

On August 13, 2024, Defendant moved for partial dismissal of Plaintiff's claims; specifically, Defendant moved to dismiss Plaintiff's claims related to his removal for failure to exhaust his administrative remedies, and his discrimination claims based on sex and sexual orientation for failure to state a claim. (Doc. No. 7.) Plaintiff filed his response on August 28, 2024. (Doc. No. 9.) On September 3, 2024, Defendant filed its Reply, and

states it "will withdraw its motion to dismiss [Plaintiff's removal] claim for failure to exhaust, while reserving the right to revisit it at summary judgment following development of his issue during fact discovery." (Doc. No. 10 at 2.) Thus, the Court solely addresses whether Plaintiff's discrimination claim passes muster under Federal Rule of Civil Procedure 12(b)(6).

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *see Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).

  In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *Los Angeles Lakers*, 869 F.3d at 800 (quoting *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. "Further, it is improper for a court to assume the claimant "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). "A district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.*

### III. DISCUSSION

  As relevant here, Plaintiff brings his first cause of action in part for discrimination on the basis of sex and sexual orientation under Title VII. (Compl. ¶¶ 48–54.) Defendant moves to dismiss Plaintiff's first claim for discrimination under Rule 12(b)(6), arguing Plaintiff's Title VII claim is subject to dismissal because Plaintiff fails to make a prima facie showing of discrimination based on sex and sexual orientation. (Doc. No. 7 at 5.) Because Defendant solely moves to dismiss Plaintiff's first claim to the extent it relies on discrimination based on sex or sexual orientation, the Court finds Defendant's motion waived as to Plaintiff's disability claim under the Rehabilitation Act. (*See id.* at 5–6.)

  Title VII prohibits a covered "employer" from discharging or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"

42 U.S.C. § 2000e-2(a)(1). The United States Supreme Court has distinguished between two types of discrimination: "discrete discriminatory acts" and "hostile environment claims." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), *superseded by statute on other grounds*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5. Discrete retaliatory or discriminatory acts occur on the day it happens and is a one-time occurrence. *Id.* at 110–11. Examples are "failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. On the other hand, a hostile work environment involves repeated conduct and occurs over a series of days or years and a single act of harassment may not be actionable on its own. *Id.* at 115. A hostile work environment is comprised of "separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117.

Defendant asserts the majority of the factual allegations in Plaintiff's Complaint arise from his 2016 EEO complaint, which have already been adjudicated and are not before this Court. (Doc. No. 7 at 5.) Rather, the new allegations, raised in the second EEO complaint, solely relate to Plaintiff being placed on administrative duty after his conversation with Supervisor Zuniga, the subsequent Fitness for Duty exam, the resulting Notice of Removal, and ultimately, Plaintiff's termination. (*Id.*) To this point, the Court agrees that its review is limited to the events arising from Plaintiff's second EEO complaint, as Plaintiff's first EEO complaint was previously adjudicated in his favor. Defendant further asserts Plaintiff's recitation of facts fails to allege an inference that the Agency's actions as to these events were motivated by his sex or sexual orientation. (*Id.*) Plaintiff responds that his Complaint states a valid claim, as the discriminatory motive suggested by the adverse employment actions is part of a continuing pattern of conduct deriving from the actions underlying his earlier EEO complaint. (Doc. No. 9 at 7.)

### A.     Discrete Discriminatory Acts

To establish a prima facie case of sex discrimination under Title VII, a plaintiff must show: (1) he belongs to a protected class, (2) he performed his job satisfactorily, (3) he suffered an adverse employment action, and (4) the employer treated him differently because of his membership in the protected class. *Cornwell v. Electra Cent. Credit Union*,

7

439 F.3d 1018, 1028 (9th Cir. 2006). The fourth element—that the plaintiff was subjected to adverse employment action because of his membership in a protected class—can be alleged either through direct evidence of discrimination, such as a supervisor's derogatory comment about his race or gender, *see, e.g.*, *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1050 (9th Cir. 2009), or through circumstantial evidence, which may include allegations that similarly situated individuals outside the plaintiff's protected class were treated more favorably or that other circumstances surrounding the at-issue employment action give rise to an inference of discrimination, *see Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105–06 (9th Cir. 2008). "While an employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss, courts generally take each element in turn in determining whether [a plaintiff] has stated a plausible claim for relief." *Howell v. STRM LLC – Garden of Eden*, No. 20-cv-00123-JSC, 2020 WL 5816582 at *3 (N.D. Cal. Sept. 30, 2020) (quoting *Brown v. FPI Mgmt., Inc.*, No. C–11–05414–YGR, 2012 WL 629182, at *3 (N.D. Cal. Feb. 27, 2012)) (internal quotation marks omitted).

Plaintiff has alleged the first element of a Title VII claim, as the Complaint identifies Plaintiff as a gay man. (Compl. ¶ 8); *Bostock v. Clayton Cnty.*, 590 U.S. 644, 662 (2020) (finding that discrimination based on sexual orientation is also a form of sex discrimination under Title VII because "[f]or an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex"). Therefore, Plaintiff is part of a protected class based on his sex and sexual orientation.

As to the second element, Plaintiff affirmatively alleges he performed his job adequately. Specifically, the Complaint states that "[b]y all accounts, Plaintiff was an outstanding correctional officer. Over the years of his employment with the BOP, Plaintiff consistently received positive performance reviews." (Compl. ¶ 6); *see, e.g.*, *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012) (finding the plaintiff plausibly alleged the second element where she alleged that her performance was "satisfactory or better" and that "she received consistently good performance reviews"); *Brown*, 2012 WL

629182, at *4 (finding the plaintiff plausibly alleged the second element where she alleged that she performed her job satisfactorily, received positive performance reviews, and was asked to help train other employees). Because Plaintiff alleges he performed his job adequately, he has established the second element of a Title VII claim.

Plaintiff has satisfied the third element. Plaintiff alleges he was placed on administrative suspension, demanded to undergo a fitness-for-duty psychological examination before permitted to return to work, received a Notice of Proposed Removal, and was ultimately terminated because of his protected status as a gay male. (Compl. ¶ 52.) An adverse employment action generally is one that "materially affect[s] the compensation, terms, conditions, or privileges of . . . employment." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000). As to the fitness for duty exam, "[u]nder EEOC's regulations, employers are allowed to require medical examinations, such as Fitness for Duty examinations, in an effort to comply with the interactive process and discover necessary accommodations." *Carlson v. City of Spokane*, No. 13–CV–0320–TOR, 2014 WL 5334264, at *10 (E.D. Wash. Oct. 20, 2014) (citing 29 C.F.R. § 1630.14(c)(1)(i)). Here, Plaintiff does not allege facts showing that the fitness exam materially affected his compensation or the terms, conditions, or privileges of his employment, so it does not constitute an adverse employment action. *See McCarthy v. Brennan*, No. 15-cv-03308-JSC, 2016 WL 946099, at *5 (N.D. Cal. Mar. 14, 2016) (holding that a fitness exam—on its own—was not an actionable adverse employment action); *McFadden v. El Centro*, No. 13CV1580 JM DHB, 2014 WL 3002364, at *3 (S.D. Cal. July 2, 2014) (holding that requiring the plaintiff to submit to a fitness exam, without more, was not an actionable adverse employment action); *Bellusa v. Bd. of Educ. of the Oakland Unified Sch. Dist.*, No. C-13-2930 JSC, 2013 WL 6443374, at *8 (N.D. Cal. Dec. 9, 2013) (noting that the plaintiff must allege more to show that even repeated fitness exam orders were adverse employment actions, but finding an adverse employment action based on other conduct). Moreover, it should not go without mention that Defendant only scheduled the fitness exam after Plaintiff made remarks to his supervisor which were found threatening. (*See* Compl. ¶ 31.)

Additionally, Plaintiff has not alleged any facts regarding his administrative leave as to whether it affected any term, condition, or benefit of employment, including whether the leave was paid or unpaid. (*See generally id.*) Thus, without more, the Court finds this does not constitute an adverse employment action. *See Franks v. City of Santa Ana*, No. SACV 15-108 JVS (DFMx), 2015 WL 13919157, at *3–4 (C.D. Cal. Apr. 27, 2015) (holding the plaintiff sufficiently pled an adverse employment action based on administrative leave where she was ordered not to have contact with numerous individuals and had to surrender her city vehicle and duty weapon); *Gannon v. Potter*, No. C 05-2299 SBA, 2006 WL 3422215, at *4–5 (N.D. Cal. Nov. 28, 2006) (holding that paid administrative leave is not an adverse employment action and noting several Circuits have reached the same result). However, Plaintiff's allegations regarding termination materially affect the conditions of employment sufficient to constitute an adverse employment action. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (termination constitutes an adverse employment action); *Rux v. Starbucks Corp.*, No. 2:05CV02299MCEEFB, 2007 WL 1470134, at *7 (E.D. Cal. May 18, 2007) ("Plaintiff's termination constitutes [an] adverse employment action.").

   Plaintiff fails to adequately allege the fourth element: that Defendant terminated his employment *because of* his sex or sexual orientation. Under the "discrete discriminatory act" analysis, the Complaint lacks factual allegations of direct evidence of discrimination regarding Plaintiff's termination, such as an allegation that a supervisor made a derogatory comment about Plaintiff's sex or sexual orientation. *See, e.g.*, *Boeing Co.*, 577 F.3d at 1050. Nor does Plaintiff allege, for instance, that Defendant did not terminate other heterosexual employees who engaged in similar conduct. *See Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct"); *Lin v. Potter*, No. C-10-03757-LB, 2011 WL 1522382, at *11–12 (N.D. Cal. Apr. 21, 2011) (finding the plaintiff failed to meet the fourth element where she failed to allege that the employee who received a promotion

instead of her was similarly situated regarding eligibility for promotion and failed to allege he was a different race than her).

### B. Hostile Work Environment

Next, a prima facie case for a hostile work environment under Title VII requires a plaintiff to show (1) he was subjected to verbal or physical conduct because of his status in a protected class; (2) the conduct was unwelcome; and (3) the conduct "was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez*, 349 F.3d at 642; *see also Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 871 (9th Cir. 2001). The alleged conduct must establish that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).

As noted above, Plaintiff asserts he was discriminated against under Title VII on the basis of his sex and sexual orientation. However, Plaintiff's allegations do not establish conduct supporting a hostile work environment under Title VII. Plaintiff alleges he was placed on administrative leave after the telephone call with Supervisor Zuniga, in which Plaintiff's unspecified statements were "interpret[ed] as a threat." (Compl. ¶ 31.) While on administrative leave, and due to the phone call, Plaintiff underwent a fitness for duty examination, which resulted in a finding that he was unfit for duty. (*Id.* ¶ 33.) Thereafter, Defendant issued a Notice of Proposed Removal, which ultimately resulted in his removal. (*Id.* ¶¶ 35, 47.) Plaintiff alleges Defendant's adverse actions show a continuing pattern of wrongful conduct, which continues in nature from Plaintiff's first EEO complaint. (Doc. No. 9 at 8–9.) However, Plaintiff fails to allege any facts that he was subjected to verbal or physical conduct *because of* his status in a protected class that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Vasquez*, 349 F.3d at 642.

///

///

## IV. CONCLUSION

Based on the foregoing, the Court **DISMISSES WITH LEAVE TO AMEND** Plaintiff's first cause of action to the extent it asserts discrimination on the basis of sex or sexual orientation under Title VII. Should Plaintiff choose to do so, he may file an Amended Complaint by **December 27, 2024**. Defendant must file a responsive pleading no later than **January 10, 2025**.

**IT IS SO ORDERED.**

Dated: December 11, 2024

Hon. Anthony J. Battaglia
United States District Judge